*L. J. Warren (Smith & Lewis* on the brief) for defendant.

---

TERRITORY OF HAWAII, EX RELATIONE, CHARLES COSTER,*v.* R. H. TRENT AS TREASURER OF THE CITY AND COUNTY OF HONOLULU, TERRITORY OF HAWAII.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED FEBRUARY 25, 1909.                     DECIDED MARCH 1, 1909.

HARTWELL, C.J., WILDER AND BALLOU, JJ.

MUNICIPAL ACT—*appointing power.*

    Under the Municipal Act (Act 118 S. L. 1907) the board of supervisors has no power to appoint or employ employees of the road department.

MUNICIPAL ACT—*power of treasurer.*

    Under Sec. 138 of the Municipal Act the city and county treasurer may refuse to pay a warrant based on an illegal claim.

OPINION OF THE COURT BY HARTWELL. C.J.

This is an appeal by the defendant from an order of the circuit judge for a peremptory writ of mandamus and from the writ commanding the defendant to pay to the plaintiff the sum of $30.15 upon a warrant in his favor issued by the auditor of the city and county of Honolulu, hereinafter referred to as the city, payable out of the appropriation made by the board of supervisors for Maintenance of Roads Honolulu District, Pay Roll, and being plaintiff's wages at $85 a month fixed by the board of supervisors for his service as foreman of the fourth district stables maintained by the city in connection with the care and maintenance of its public roads. The plaintiff was employed by supervisors Quinn, Aylett and Kane, the board's committee on roads, bridges, garbage, parks and public improvements. The defendant's objection to paying the warrant was that the plaintiff was not lawfully employed by the committee of the board.

The pleadings and briefs are voluminous, reciting the proceedings of the board of supervisors, an opinion of the city and county attorney and a letter or message to the board by the mayor giving his version of the law, but when everything possible is written and said on the subject the controversy comes down to the question whether under the municipal act the board of supervisors has power to select and engage employees as well as to fix their wages for public service in connection with the care and maintenance of the public highways, for if it has not this power it cannot delegate it nor can the power be evolved from or based upon any legislative act, ordinance, rule of procedure or resolution of the board whatsoever.

The evidence was properly rejected which the defendant offered to show the purpose of the action taken by the board of supervisors of the county of Oahu on January 4, 1909, just before the hour of noon when its office expired, in abolishing all "boards, committees, commissions, officers, positions and employ-

ments heretofore created" by it and repealing "all motions, votes, orders, resolutions, rules and regulations creating or tending to create" the same, as well as "the rules and regulations heretofore adopted by this board and now in force."

The petition showing that in this case the warrant had been examined, allowed and ordered paid the plaintiff contends that under *McClanahan v. Trent,* 17 Haw. 190, 193, there is no "power which the treasurer himself has to decline to pay a warrant which has been 'legally examined, allowed and ordered paid by the board of supervisors,' as the law does not constitute him an authority to scrutinize the acts of the board and to pay or refuse to pay warrants in payment of claims passed by the board according, as in his opinion, the action of the board was legal or illegal." The opinion goes on to state: "The only way in which payment of an unauthorized, fraudulent or illegal claim can be prevented after a warrant has been issued by the auditor would be by an injunction of a court having jurisdiction of such matters; but no illegality, fraud or lack of authority appears in this case." The defendant insists that since under Sec. 138 of the Municipal Act (which is Act 118 S. L. 1907), which was not in the County Act, he would be liable to the city and county and on his bond if he "pay any demand on the treasury not authorized by law, ordinance or this charter," "he has the power to refuse to pay if he thinks that the claim is illegal." In *Lyman v. Maguire,* 17 Haw. 142, refusal to grant a writ of mandamus to compel the auditor of the county to issue a warrant on the treasurer in payment of a claim for salary as sheriff's clerk was affirmed, the court holding that "a county auditor has the right in a proper case to question the validity of claims allowed and ordered paid by the board of supervisors," and that the claim in that case was not a lawful claim.

Upon the whole we are of opinion that Sec. 138 authorizes the treasurer to refuse payment of a warrant based upon a claim which in his opinion is unlawful, otherwise the provision meant

to restrain illegal use of municipal funds would be inoperative.

Sec. 4 of the Municipal Act gives to the city all the powers of every description of the then existing county of Oahu and declares that the municipality is the successor of the said county. Sec. 3 of the County Act gave the county supervisors power "to open, construct, maintain and close up public streets, highways, roads, alleys, trails and bridges within its boundaries." Under this power, thus transferred to the city, the selecting, engaging and employment of persons to perform the service required in maintaining public highways become necessary. The board of supervisors has express power under Sec. 23 of the Municipal Act "To fix the hours of labor or service required of all employees and laborers in the service of the City and County, and to fix their compensation." But who are to employ the laborers or employees, the supervisors, whose general functions, as defined by the act, are legislative, or the mayor who is made by the act the chief executive officer? The division or apportionment of public work is conveniently and properly made according to the nature of the service required, as, for instance, maintaining roads and bridges and clearing streets would naturally come under one head, sanitation and health another, and so on. Each head, subdivision or department requires, in order that it receive proper attention, some one or more persons to be placed in charge authorized to employ men to do the work required to be done. Under the County Act the board of supervisors appointed the persons in charge of each department and the chiefs of departments so appointed engaged and looked after the employees, the chiefs of the departments being subordinate officers of the board under the power expressly given to the board by Par. 2 of Sec. 62 of the County Act (Act 39 S. L. 1905): "To appoint such subordinate officers as they may deem necessary for the public service," but this power is not given to the board of supervisors by the Municipal Act. If this power were not otherwise placed by the act it might be implied, as con-

tended by the plaintiff, from the power to maintain roads, but the act, Sec. 81, gives to the mayor the power of appointing, with the approval of the board, all officers whose appointment is not otherwise specially provided for in the act or by law.

According to the plaintiff's theory this power would be confined to the appointment of the mayor's own secretary, no other officers being specifically mentioned, with the possible exception of inspectors of elections. According to the theory of the defendant most relied upon, the officers referred to are those not specifically named in the act but actually existing under the county government, particularly those whose offices were created under territorial law and who continued to exercise corresponding functions under the County Act. These, according to defendant's contention, would be appointed by the mayor, with the approval of the board of supervisors, and would naturally and by necessary implication have the selecting of their own employees.

There are parts of the act which are inconsistent with either theory, but we are of the opinion that the decided preponderance of argument supports the contention of the defendant. The power to select employees might, in the absence of any other power, be inferred from the power given the supervisors "To make contracts and to do all things necessary and proper to carry into execution the foregoing powers and all other powers vested in said City and County or in any officer thereof" (Sec. 23 Par. 20), but such construction seems forced and unnatural. It is admitted that the enumeration of city and county officers in Secs. 24, 35 and 39 is not exhaustive, the existence of others being implied in Secs. 17, 27, 81, 131, 141 and 146. "Departments" though not specifically created are frequently referred to and their power to employ subordinates and employees is assumed in Secs. 135 and 145. This last section, providing for the procedure when additional employees are required, is of especial significance. The supervisors upon the recommenda-

tion of the mayor authorize the appointment of additional employees and provide for their compensation; the appointments are made by the officer; board or department requiring them. This seems incompatible with the appointment of employees by the supervisors.

The plaintiff in this case does not bring himself within the class of employees employed by a de facto officer holding a legal office with the power of appointment. He claims solely under his appointment by the committee of the supervisors, ratified by the board. We are of the opinion that his employment was without authority of law and that he has no legal claim to his wages.

The order appealed from is reversed and the case remanded with instructions to dismiss the petition and alternative writ.

*J. W. Cathcart, City and County Attorney,* and *F. W. Milverton, First Deputy City and County Attorney,* for plaintiff.

*W. A. Kinney (E. M. Watson* with him on the brief) for defendant.